# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LEANN HILGERS § | |
| § | |
| v. § | CIVIL ACTION NO. 3:19-CV-1472-S |
| § | |
| VIP MOVING & STORAGE INC. and DY § | |
| DREAM VANLINES INC. § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant VIP Moving & Storage, Inc.'s Partial Motion to Dismiss ("VIP Motion to Dismiss") [ECF No. 28], and Defendant DY Dream VanLines, Inc.'s 12(b)(6) Motion to Dismiss Plaintiff's State Law Claims ("DY Motion to Dismiss;" and together with the VIP Motion to Dismiss, the "Motions to Dismiss") [ECF No. 31]. For the following reasons, the Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This case involves a dispute over the alleged overcharges related to Plaintiff LeAnn Hilgers' interstate move and the loss of or damage to Hilgers' property while in transit. On or about January 10, 2017, Hilgers contacted Budget Van Lines ("Budget"),[1] a moving broker, to arrange her move from California to Texas. Second Am. Compl. ("Compl.") ¶¶ 1, 6. Budget provided Hilgers with a cost estimate and connected her with Defendant VIP Moving & Storage, Inc. ("VIP"), a California moving company that Hilgers understood would perform the move. *Id.* ¶¶ 3, 7-8; Resp. 1. VIP subsequently sent Hilgers an Order for Service containing a price estimate, which she signed. Compl. ¶ 8. Because she had not yet secured a place to live in Texas, Hilgers

---

[1] Hilgers Second Amended Complaint states that Budget, VIP, and DY are jointly and severally liable to Hilgers. Compl. ¶ 28. However, Budget is not named as a defendant in the caption and Hilgers has not served Budget.

needed to place her belongings in storage after vacating her California apartment. *Id.* Hilgers claims that VIP assured her that her belongings would be safe in their secured storage facility. *Id.*

On January 19, 2017, VIP came to Hilgers' California apartment to load her belongings. *Id.* For reasons that are not clearly explained in the Complaint, the move was delayed. *Id.* VIP returned the next day and loaded Hilgers' belongings onto their truck. *Id.* After all of her items were loaded, Hilgers claims VIP told her the cost of the move would be twice the original estimate. *Id.* If she did not sign documents agreeing to the higher price, VIP allegedly told Hilgers they would unload her belongings in the parking lot, but she would still have to pay for their time and loading fees. *Id.* Hilgers was shocked and alleges she was forced to sign documents without being given an opportunity to read them or ask questions, including an Interstate Bill of Lading Contract and Order for Service ("Bill of Lading"). *Id.*; Pl.'s Ex. 3. Before leaving, VIP allegedly told Hilgers that VIP would "take revenge" on her for changing the loading date. Compl. ¶ 8. After the pick up, Hilgers contacted VIP and Budget multiple times about the price increase, but claims she was unable to obtain assistance. *Id.* ¶ 9.

Additional problems ensued. When Hilgers was ready for her items to be delivered to her new residence in Irving, Texas, Hilgers claims VIP raised the price again. *Id.* ¶ 11. According to Hilgers, VIP advised that she had to pay thousands of additional dollars for "truck and access fees" because she lived up one flight of stairs, even though she had previously been told that one flight of stairs would be included in her original price estimate. *Id.* ¶¶ 11-12. Hilgers also claims VIP told her she had to pay her balance by cash or postal money order and sign various documents before they would deliver her items. *Id.* ¶¶ 13, 16. When the movers arrived, Hilgers claims they told her they would drive away if she did not sign the documents, even though she had not been given an opportunity to inspect her belongings. *Id.* ¶ 16. Hilgers was not given a copy of the

documents she signed at the time of delivery, but recalls that they referred to VIP as the mover. *Id.* Hilgers now believes that VIP had subcontracted with DY Dream VanLines, Inc. ("DY") to move Hilgers' property from storage in California to her new residence in Texas, which the parties do not dispute. *Id.* ¶ 20.

After delivery, Hilgers discovered that many of her belongings were damaged, missing, or used. Specifically, Hilgers states that there were stains on her couch and other items, her television was broken, electronics and furniture were missing, and she was pricked by sewing needles in her couch cushions, indicating that someone else had used the couch as Hilgers doesn't sew. *Id.* ¶ 18. Hilgers states that neither VIP nor DY inspected her property during any stage of the move and, therefore, she does not know where the damage occurred. *See id.* ¶ 28. Based on the foregoing allegations, Hilgers alleges damages of at least $60,000 and brings claims pursuant to the Carmack Amendment and Texas state and common law. *Id.* ¶¶ 21-30. These claims include: (1) breach of contract; (2) violation of the Texas Deceptive Trade Practices Act; (3) fraud; (4) negligence; (5) conversion; (6) overcharges; (7) exemplary damages; and (8) attorney's fees. *Id.* ¶¶ 22-30; Resp. 3.

VIP and DY move to dismiss Hilgers' state and common law claims principally on the grounds that such claims are preempted by the Carmack Amendment. VIP Mot. to Dismiss 2; DY Mot. to Dismiss 2.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

#### A. *Choice of Law*

Plaintiff brings her claims pursuant to the Carmack Amendment and Texas law, and the parties cite primarily to case law from this Circuit. The parties have not raised choice of law issues. For this reason, the Court declines to analyze choice of law issues sua sponte and the parties are deemed to have acquiesced to the law of this forum. *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 412 (N.D. Tex. 2009) ("The court need not sua sponte analyze choice of law issues unless raised by the parties."); *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, No. Civ.

4

SA03CA305FB, 2005 WL 2708811, *6 (W.D. Tex. June 3, 2005) ("The parties have the obligation to call the applicability of another forum's law to the court's attention. Where the parties fail to raise the issue of choice of law, the Court need not raise the issue sua sponte, and the parties are deemed to have acquiesced in the application of the law of the forum.") (internal quotation marks, alterations, and citations omitted).

### B. *Applicability of Carmack Amendment to Intrastate Leg of Transit*

It is undisputed that Hilgers' property was moved from California to Texas in two legs. On the first leg, Hilgers believes that VIP moved her property from her California apartment to VIP's storage facility in California. Compl. ¶ 20. On the second leg, Hilgers believes DY moved her property from the storage facility in California to her residence in Texas, which VIP and DY do not dispute. *Id.* Although the Complaint is not entirely clear on this point, Hilgers appears to argue that the Carmack Amendment does not apply to VIP because VIP moved her property solely between two locations in California.[2] *See id.* ¶ 22 ("Plaintiff would also show that the Carmack Amendment does not apply to intrastate shipping of property. VIP did not ship Plaintiff's property interstate, only from one part of California to another.").

This theory, however, is not supported by case law. Although it is well-settled that the Carmack Amendment does not apply to transport that is wholly intrastate, *Berlanga v. Terrier Transp., Inc.*, 269 F. Supp. 2d 821, 826 (N.D. Tex. 2003) (citing 49 U.S.C. § 13504), the Fifth Circuit has found that a carrier is engaged in interstate commerce when carrying goods that are ultimately bound out-of-state, *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976). If the intended final destination is interstate, the Carmack Amendment applies to each leg of the journey, including intrastate legs. *Id.*; *see also Project Hope v. M/V IBN SINA*, 250

---

[2] Hilgers appears to abandon this argument as she does not continue to assert it in her Response.

5

F.3d 67, 75 (2d. Cir. 2001) (noting that if the intended final destination is in another state, the Carmack Amendment applies throughout the shipment). This analysis does not change when multiple carriers are involved, even if a particular carrier moves goods solely intrastate. *Vesta Forsikring AS v. Mediterranean Shipping Co., SA*, No. Civ. A. H-00-1938, 2001 WL 1660255, *2 (S.D. Tex. Aug. 10, 2001) ("Where multiple carriers are responsible for different legs of a generally continuous shipment, courts must look to the shipment's final destination as intended at the time the shipment commenced. This is true even when the domestic portion of travel falls solely within a single state. In such a case, the Carmack Amendment applies throughout the shipment, even to a carrier that is responsible only for an intrastate leg.") (citations omitted); *Cioppa v. Schultz*, Civil Action No. SA-16-CV-747-XR, 2016 WL 6652764, *3 n.4 (W.D. Tex. Nov. 10, 2016) ("Kona carried Cioppa's possessions solely in Hawaii, but their final destination, by way of a subcontracted common carrier, was Texas. This type of transportation is covered by the Carmack Amendment.").

It is undisputed that Hilgers intended her belongings to be moved from California to Texas. Compl. ¶ 1; Bill of Lading (noting an origin in California and destination in Texas). Even though the first leg of the journey was between two points in California, the Carmack Amendment applies to the entire journey because Hilgers' possessions were ultimately bound for Texas. *Enerflex Energy Sys., Inc. v. Jetco Heavy Haul, LLC*, Civil Action No. H-13-3470, 2014 WL 12618091, *3 (S.D. Tex. Oct. 23, 2014) (Carmack Amendment applied to shipment of cargo that was damaged while en route to storage in Texas because cargo was ultimately bound for Alabama). Therefore, the Court finds that the Carmack Amendment is applicable to both VIP and DY[3] and covers each

---

[3] Although Hilgers states that she does not have a contract with DY and that DY is not a licensed interstate carrier, Compl. ¶¶ 24-25, she does not dispute that the Carmack Amendment is applicable to DY.

6

segment of the journey—from Hilgers' apartment in California to storage, and from storage to her new residence in Texas.

### C. *Abandoned Claims*

Hilgers concedes that the Carmack Amendment preempts the bulk of her state-law claims, but argues that her claims for conversion, overcharges, and exemplary damages are not preempted. Resp. 1 ("Plaintiff concedes that well established Fifth Circuit case law, contrary to the law in other circuits, holds that the Carmack Amendment preempts most state law claims. However, Plaintiff's state law claims for conversion and overcharges are not preempted."); *Id.* 3-4 ("If this Court allows Plaintiff's claims for overcharges that were obtained through extortion and conversion of her property, the Court must leave Plaintiff's claim for exemplary damages in [a]s well."). Because Hilgers concedes that the Carmack Amendment preempts most state-law claims and does not address her claims for breach of contract, violation of the Texas Deceptive Trade Practices Act, fraud, negligence, and attorney's fees in her Response, the Court deems these claims abandoned. *Hernandez v. City of Grand Prairie Texas*, Civil Action No. 3:16-CV-2432-L, 2017 WL 4098596, *13 (N.D. Tex. Sept. 15, 2017) ("When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss or summary judgment, the claim is deemed abandoned.") (citing *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). The Court need not address these abandoned claims and dismisses them. *Id.* (deeming plaintiffs' state-law claims abandoned because plaintiffs did not address them in their response to a motion to dismiss and dismissing them with prejudice as a result); *Neresova v. Suntrust Mortg., Inc.*, Civil Action No. 3:11-cv-976-BH, 2011 WL 13127891, *3 n.2 (N.D. Tex. Nov. 16, 2011) ("While Defendants also move to dismiss Plaintiff's claims for breach of contract, statutory fraud, and violations of the DTPA and TDCA, there is no need to address those claims because Plaintiff has abandoned them in her response.").

### D. *Carmack Amendment Preemption*

VIP and DY assert that Hilgers' state and common law claims must be dismissed because they are preempted by federal law. VIP also asserts that Hilgers' state-law and common law claims should be dismissed pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.

The Carmack Amendment generally preempts state-law claims arising out of the shipment of goods by interstate carriers. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citing *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir. 1996)); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993). The Fifth Circuit has held that the preemptive scope of the Carmack Amendment is "sweeping." *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1008 (5th Cir. 2010) (citation omitted). Courts have rejected nearly all state-law claims related to goods that have been lost or damaged in interstate shipping as preempted. *See, e.g., Moffit*, 6 F.3d at 306-07 (finding claims for the tort of outrage, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, breach of implied warranty, breach of express warranty, violation of the Texas Deceptive Trade Practices Act, slander, misrepresentation, fraud, negligence, gross negligence, and violation of common carrier duties under state law were preempted by the Carmack Amendment). Although Hilgers generally agrees, she asserts that her claims for conversion, overcharges, and exemplary damages are not preempted.

### (1) *Conversion*

Hilgers raised her claim for conversion, and additional facts supporting such claim, for the first time in her Response. "As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court." *Roe v. U.S. Dept' of Homeland Sec.*, No. 3:19-cv-2595-C-BH, 2020 WL 4456528, *3

8

n.3 (N.D. Tex. July 13, 2020) (citations omitted). However, courts may construe new allegations and theories asserted in responses to dispositive motions as motions to amend. *Id.* (citing, among other authorities, *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992)). Accordingly, the Court construes Hilgers' conversion claim as a motion to amend, grants the motion, and considers the new allegations asserted in her Response. *Id.* (construing allegations raised in response as a motion to amend, granting the motion, and considering the new allegations).

Although the Fifth Circuit has held that most state-law conversion claims are preempted, the Fifth Circuit has noted a limited exception for "true conversion claims" in which a carrier intentionally converts for its own purposes. *Tran Enters., LLC*, 627 F.3d at 1009 ("We acknowledge that in some circumstances, where a carrier has intentionally converted for its own purposes the property of the shipper, traditional true conversion claims should be allowed to proceed and limitations on liability should be considered inapplicable.") (citation omitted). The party asserting such exception bears the burden of proof at trial. *Id.* at 1010. It is not enough to claim that property is lost or missing. *See id.* at 1009 (citing *Glickfeld v. Howard Van Lines Inc.*, 213 F.2d 723, 727 (9th Cir. 1954) for the proposition that a true conversion claim requires proof that the carrier has appropriated for its own use or gain, rather than the simple fact that the property has gone missing); *see also Shamoun v. Old Dominion Freight Line, Inc.*, Civil Action No. 3:19-CV-2034-G, 2020 WL 570903, *6 (N.D. Tex. Feb. 4, 2020) (finding shipper's conversion claim was preempted when shipper asserted that carrier placed her property in a dumpster, but did not assert that carrier intentionally converted the property for its own purposes).

Hilgers asserts that it is "more than likely" that VIP's employees stole her property for their own use while her property was stored at VIP's storage facility in California, although she states that it is equally possible that DY's employees stole her property. Viewing these allegations as

9

true and drawing all reasonable inferences in favor of Hilgers, the Court finds that Hilgers has sufficiently stated a true conversion claim such that it is not preempted by the Carmack Amendment.

### (2) *Overcharges*

Hilgers argues that her claim for overcharges, which she states were obtained through extortion, are not preempted by the Carmack Amendment. The Fifth Circuit has found that the Carmack Amendment "preempts any common law remedy that increases the carrier's liability beyond 'the actual loss or injury to the property,' 49 U.S.C. § 11707(a)(1), *unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property.*" *Morris v. Covan World Wide Moving Inc.*, 144 F.3d 377, 382 (5th Cir. 1998) (citing *Gordon v. United v. Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997) & *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506-07 (1st Cir. 1997), *cert denied*, 522 U.S. 809 (1997)) (emphasis added).

Hilgers' overcharges claim is separate and apart from the loss or damage to her shipped property. *Compare Ducham v. Reebie Allied Moving & Storage, Inc.*, 372 F. Supp. 2d 1076, 1079 (N.D. Ill. 2005) (finding "claim of fraud—not at all in connection with the loss of or damage to his goods, but rather in the extortion of a large added payment under duress—are not" preempted), *with Chisesi Brothers Meat Packing Co. v. Transco Logistics, Inc.*, Civil Action No. 17-2747, 2017 WL 2573992, *7 (E.D. La. June 14, 2017) (finding bad faith claim was preempted because plaintiff would not have had a bad faith claim were it not for the damaged shipped property). Viewing Hilgers allegations as true and drawing all reasonable inferences in favor of Hilgers, the Court finds that Hilgers has sufficiently stated a claim for overcharges such that it is not preempted by the Carmack Amendment.

### (3) *Exemplary Damages*

Without citing any authority, Hilgers argues that if the Court allows her claims for conversion and overcharges to proceed, the Court must allow her claim for exemplary damages to proceed as well. Although courts in this Circuit have found that the Carmack Amendment preempts claims for exemplary damages, s*ee, e.g., Levy v. United Van Lines, LLC*, Cause No. A-09-CA-005-LY, 2009 WL 10700136 (W.D. Tex. Feb. 5, 2009), none of the parties have addressed whether exemplary damages are available in the context of claims for conversion and overcharges. Therefore, the Court will deny Hilgers' claim for exemplary damages at this time.

### IV. CONCLUSION

For the reasons discussed above, the Court GRANTS the Motions to Dismiss with respect to Hilgers' claims for: (1) breach of contract; (2) violation of the Texas Deceptive Trade Practices Act; (3) fraud; (4) negligence; (5) exemplary damages; and (6) attorney's fees and dismisses such claims. The Court DENIES the Motions to Dismiss with respect to Hilgers' claims for conversion and overcharges. Hilgers has sought leave from the Court to amend her Complaint. Resp. 4. Although it may be futile for Hilgers' to amend her Complaint with regard to her state-law claims for the reasons explained in this Opinion, Hilgers shall have until December 23, 2020 to file an amended complaint. If an amended complaint is not filed by that date, Hilgers' state-law claims that have been dismissed pursuant to this Order will be dismissed with prejudice.

**SO ORDERED.**

SIGNED December 2, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**